*E-filed 6/14/06*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICRON TECHNOLOGY, INC.<br><br>    Plaintiff,<br><br>v.<br><br>TESSERA, INC.,<br><br>    Defendant.<br>_____/ | Case No. C06-80096 MISC. JW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**[Re Docket No. 1]** |

**BACKGROUND**

Micron Technology (Micron) sues Tessera, Inc. (Tessera) in the Eastern District of Texas for patent infringement. Here, in this Miscellaneous Action, Micron moves to compel discovery from a third party, Siliconware USA, Inc. (SUI).

The patents in suit pertain to semiconductor "packaging." In this context packaging is the permanent protective structure (or host) into which a silicon semiconductor chip is embedded. Electrical contacts on the packaging provide connections from the chip to the device in which the chip is to function.

Tessera licensed its allegedly infringing technology to SUI's parent company. Micron claims that Tessera induced and/or contributed to infringement by SUI. Micron argues that the documents it seeks from SUI are important to proving its case against Tessera.

Micron served SUI with an extraordinarily broad subpoena listing 53 categories of documents. Micron did not serve a subpoena on Siliconware Precision Industries, Co., Ltd.

(SPIL), the Taiwan manufacturer with a relationship to SUI that is disputed by the parties. SUI claims that, as a mere marketer of the semiconductors at issue, it has few responsive documents, and that documents in the possession of SPIL are not subject to the subpoena. SUI has produced approximately 300 pages of documents, but Micron remains unsatisfied.

Before the motion came on for hearing, but after SUI had filed its opposition, Micron submitted a revised "subpoena" which purported to significantly narrow the universe of the documents sought.[1]

There is no need to grapple with the original 53 categories of documents. The court will direct its attention to the so-called revised subpoena, which contains but four categories.

The new "subpoena" starts with a definition of what Micron considers to be SUI's relevant "products." This definition is complex and convoluted and, in the court's mind, not narrowly tailored.[2] The documents sought are those that go back to July 15, 1999. Then, paraphrased, the four categories are: documents sufficient to identify the "structure, design, and manufacture" of the products, sales numbers and marketing materials regarding the products, six samples of each distinctive packaging type, product identification, and all communications between SUI and Tessera relating to Tessera's technology or to Micron.

## DISCUSSION

**1. Legal Standard -- Control**

The party to whom a subpoena is served must produce all responsive items within its "possession, custody, or control." Fed. R. Civ. P. 34(a). Documents not actually possessed by

---

[1] The word "subpoena" is a misnomer, since the document was never properly served. More accurately, it is a further meet and confer effort to arrive at an agreement with NECEA over the breadth and scope of the original subpoena.

[2] " 'Your Products' shall mean all components imported, made, used, sold, or offered for sale in the United States since July 15, 1999, that are packaged with at least one die in a face down configuration in a wire-bonded ball grid array (including in a wire-bonded stacked ball grid array) and/or are packaged in a folded stack package, including all such test vehicles, samples, components, system platforms, reference designs, modules or circuit boards using any of these components or designed to be used with any of these components, and specifically including, without limitation, semiconductors packaged in an EBGA, L2BGA, TMBGA with BT substrate and PI-PBGA package and any semiconductors imported, made, used, sold, or offered for sale in the United States under license from or pursuant to any other agreement with Tessera. 'Your Products' includes but is not limited to any components imported, made, used, sold, or offered for sale in the United States since July 15, 1999, that utilize any of the following semiconductor packaging types: EBGA, L2BGA, TMBGA with BT substrate and PI-PBGA."

2

the subpoenaed party may be considered within its control if the party has "the legal right to obtain the documents on demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999). The legal right to obtain documents on demand and the practical ability to obtain documents on demand are two distinct things. Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement. A party seeking production of documents bears the burden of establishing the opposing party's control over those documents. *United States v. Intern. Union of Petro. & Indus. Wkrs.*, 870 F.2d 1450, 1452 (9th Cir. 1989).

**2. Analysis -- Control**

SUI argues that it should not have to produce SPIL's documents because the two companies are independent corporate entities with separate operations. SUI has independent decision-making power over its day-to-day operations, is not a direct subsidiary of SPIL, has separate finances, and pays its own taxes and rent. SUI says it has no access to SPIL's document storage systems or computer network.

Micron states that SUI is 100% owned by SPIL, and argues that SUI would in the ordinary course of business have access to the documents Micron is seeking. Micron cites the fact that SPIL created SUI to engage as SPIL's sales agent in North America, and the fact that SUI and SPIL have overlapping management teams. Micron has not shown the court that SUI has any legal right to obtain upon demand responsive documents from SPIL. Micron has mistakenly relied on the "practical ability" test, but that test was rejected by the Ninth Circuit in *In re Citric Acid Litigation*.

SUI and SPIL are separate legal entities. There is no evidence of any contract between the two companies that gives SUI the right to demand documents from SPIL. Nor has Micron pointed to any statute or binding principle of law that grants SUI this right. The reasoning of *In re Citric Acid Litigation* is instructive: an order compelling SUI to produce SPIL's documents could be futile, since there is no mechanism for SUI to compel SPIL to produce those documents, and SPIL could legally continue to refuse to turn over further documents. See *In re Citric Acid Litigation*, 191 F.3d at 1108.

3

Micron has introduced evidence that SUI and SPIL are closely related companies with some management in common. This evidence would likely be sufficient under a "practical ability" standard, but it falls short under the Ninth Circuit's "legal right" test. Because Micron has not demonstrated that SUI has "control" over documents possessed by SPIL, SUI is not required to produce such documents.

### 3. Legal Standard -- Relevance and Burden on Non-Parties

The scope of discovery under the Federal Rules is quite broad. Under Rule 26, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discovery requests are relevant when they seek admissible evidence or evidence that is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). However, courts have jurisdiction to limit discovery under this rule for various reasons, including that the discovery is obtainable from some other source that is more convenient, less burdensome, or less expensive, or if the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2). This same relevancy standard applies to third-party subpoenas. *See Truswal Sys Corp v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1209-12 (Fed. Cir. 1987). An ancillary court should be "especially hesitant" to pass judgment on relevancy. *See Id.* at 1212.

### 4. Analysis -- Relevance and Burden on Non-Parties

SUI contends that Micron has failed to narrowly tailor the document requests to avoid undue burden on third parties (Fed. R. Civ. P. 45(c)(1)). For example, to satisfy the request for financial documents SUI would have to search through seven years of documents. Moreover these extensive searches would be unlikely to find responsive documents, as those would be held by SPIL. Micron does not fully respond to these arguments in its Reply, because the Reply focuses on the new "subpoena." Micron argues that the new subpoena's requests conform tightly to its needs for the case against Tessera. The court is not convinced by SUI's general arguments about the burden of responding to the subpoena, nor is the court convinced that SUI has complied to the best of its abilities.

First, the court is not satisfied with the declaration submitted by Alex Chenok, Director

4

of Strategic Marketing at SUI. This declaration purports to respond to the original subpoena on behalf of SUI with declarations such as "SUI does not *generally* maintain purchase orders for any products" (emphasis added) and is peppered with qualifiers such as "to the best of my knowledge." The court orders SUI to submit a declaration from a responsible corporate officer stating either that SUI possesses no documents responsive to this order or that SUI has produced all non-privileged responsive documents. If privileged documents are withheld, a privilege log shall be submitted to the court.

Next, the court concludes that the temporal start date chosen by Micron (July 15, 1999) is unsupported. A more appropriate date would be six months prior to the date that SPIL entered into the license with Tessera. Some period of pre-license negotiations between Siliconware entities and Tessera may be relevant to show inducement by Tessera. The court estimates that a six month period should be sufficient. The court has not been told the date of the license but trusts that the parties can agree on it and count backwards six months.

The court has tailored its order pursuant to SUI's explanation of its limited role as marketing agent. The court understands that SUI helps customers choose specific packaging technology tailored to the customer's needs, and that the remainder of the customer relationship is conducted by SPIL.

SUI indicated at oral argument that there may be a few responsive financial documents buried in dead storage but that someone would have to review everything to find them. SUI need not produce these documents, as the burden outweighs the benefit to Micron, so long as this non-production is supported by a declaration of a responsible corporate officer confirming counsel's in-court representations.

## CONCLUSION

The SUI products for which discovery must be produced are those imported, made, used, sold or offered for sale in the United States that are packaged with at least one die in a face down configuration in a wire-bonded ball grid array (including in a wire-bonded stacked ball grid array) and/or are packaged in a folded stack package. The production shall include:

a. Documents sufficient to identify the structure, design, and manufacture of the

products.

b. Documents sufficient to identify the products by number, name, or other unique descriptor.

c. Documents sufficient to identify the dollar amount and number of units, by quarter, of the products sold or imported into the United States.

d. Advertising, marketing, and/or promotional materials which relate to the packaging of the products, including:

   (1) the documentation that accompanies SUI's sales meetings with clients, such as product specifications, performance data, checklists, descriptions of standard product arrangements, and anything else in the sales kit;

   (2) any forms, manuals, and procedures for working with potential customers that SUI provides to its sales representatives;

   (3) shipping and notification documents.

d. Two physical samples of each distinctive type of semiconductor packaging used in the products. The court understands that SUI only possesses nonfunctional samples; nonetheless these samples should be turned over to Micron.

e. All communications to and from Tessera and SUI (or Tessera and SPIL) relating to any technology provided by Tessera or relating to Micron.

Although no mention has been made of a protective order, certainly SUI is entitled to protection of its sensitive proprietary information. If there is not an existing order entered in the Texas court which will serve, this court can provide one.

The declaration(s) shall be filed and the production shall take place by July 14, 2006.

**IT IS SO ORDERED.**

Dated:  6/14/06                                              /s/ Howard R. Lloyd
                                                             HOWARD R. LLOYD
                                                             UNITED STATES MAGISTRATE JUDGE